# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 24-3348

JANE DOE,
Appellant

v.

PINE RICHLAND SCHOOL DISTRICT

---

Appeal from
United States District Court for the Western District of Pennsylvania
Judge William S. Stickman IV
No. 2:24-cv-00051

---

Before: Hardiman, Krause, and Freeman, *Circuit Judges*
Argued Sep. 9, 2025; Decided: April 23, 2026

---

NONPRECEDENTIAL OPINION[*]

FREEMAN, *Circuit Judge.*

When Jane Doe's child was a student in the Pine-Richland School District, Doe sued the District to challenge its nondiscrimination policy concerning students' gender identity. The District Court dismissed the complaint in full for lack of standing. Because Doe was an object of the challenged policy while her child was enrolled in the District, she has standing to pursue damages. However, her child is no longer enrolled in the District, and Doe has not alleged that she would re-enroll her child if the policy is no longer in effect. Accordingly, she lacks Article III standing to pursue prospective relief.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

We will reverse the District Court's order insofar as it relates to Doe's pursuit of damages. Doe's claims for prospective relief were properly dismissed, but a dismissal for lack of standing should be without prejudice, so we will modify that part of the District Court's order and affirm it as modified.

**I**[1]

In 2017, the District passed Administrative Regulation 103(B) (hereafter, the "Policy") "declar[ing] it the policy of the [D]istrict to provide an equal opportunity for all students" regardless of personal characteristics, including "gender or gender identity." App. 137. The Policy states that the unauthorized disclosure of a student's "transgender status, legal name, or birth-assigned sex" violates the student's privacy rights and may harm the student's health and safety. App. 138. It also provides that, if a student discloses their transgender status to District staff, "District personnel should not disclose a student's transgender status to others, including the student's parents/guardians . . . unless: (1) legally required to do so, or (2) the student has authorized such disclosure." *Id.*

The Policy requires each school to have a Student Support Team as a resource for transgender students. A Student Support Team is made up of "appropriate staff, such as the building principal, guidance counselor, nurse, school psychologist, and teacher(s)." *Id*. "When a student transitions during the school year" the Policy directs the Student Support Team to hold a meeting with the student and "discuss a timeline for the transition

---

[1] We recount the facts as alleged in the complaint and accept them as true. *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

in order to create the conditions supporting a safe and accepting environment at the school." *Id.*[2]  The Student Support Team includes parents or guardians only "if they are involved in the process.  *Id.*

Jane Doe's child was a student in a District school for the 2023–2024 school year. During that school year, Doe became concerned that her child might identify as transgender at school and the District, under the Policy, "would immediately begin affirming her before Doe knows and can take steps to help her child obtain appropriate medical care."  App. 128.  Because of these concerns, Doe sent a written demand that the District: (1) notify her within three days of "learning about any matters related to gender identity or gender dysphoria expressed by her child," and (2) not refer her child to any mental health counselor or social worker for evaluation.  App. 127.  The District responded that, per the Policy, it would provide Doe the notification she demanded only if legally required to do so.

In January 2024, Doe sued the District for damages and prospective relief.  She brought substantive due process claims under the Fifth and Fourteenth Amendments and claims under 20 U.S.C. § 1232h—a federal statute that, among other things, grants parents rights to inspect school instructional materials and requires consent for school

---

[2] The Policy defines a gender transition as "[t]he processes by which some individuals strive to more closely align their gender identity with outward manifestations."  App. 137.  This may include "social[] transition," such as "dressing, using names and pronouns and/or be[ing] socially recognized on their gender identity," or "physical transitions," such as "modify[ing] their bodies through medical interventions."  *Id.*

3

surveys probing protected areas like political beliefs or mental health. A few months later, she amended her complaint to add claims under Pennsylvania law.

In May 2024, the District Court denied Doe's motion for a preliminary injunction against the enforcement of the Policy, concluding that Doe failed to establish Article III standing. **App. 94, 107–09.** Doe appealed that order but later voluntarily dismissed the appeal because she had withdrawn her child from the District.

In September 2024, Doe filed a further update to her complaint. She alleged that, because of the Policy, she withdrew her child from the District in July 2024 and enrolled her child in parochial school. She also alleged that she "would consider re-enrolling her child in the School District if [the Policy] is repealed, declared unconstitutional, or enjoined." App. 129.

The District Court adopted the analysis from its preliminary injunction decision and dismissed the complaint with prejudice for lack of Article III standing. Doe timely appealed.

## II[3]

Article III of the Constitution empowers federal courts to hear only "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than [this] constitutional limitation of federal-court jurisdiction." *Clapper v.*

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

*Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (first alteration in original) (quoting

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

To have a justiciable case or controversy, a plaintiff must have "a personal stake in

the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423

(2021) (citation modified). So a plaintiff must show that "she has suffered, or will suffer,

an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the

challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S.

43, 57 (2024) (quoting *Clapper*, 568 U.S. at 409). And the Supreme Court has cautioned

that a plaintiff cannot rely on a "speculative chain of possibilities" to establish Article III

standing. *Clapper*, 568 U.S. at 414. Standing must be established "for each form of

relief" that the plaintiff seeks. *TransUnion*, 594 U.S. at 436 (citation modified).[4]

The operative complaint is the one Doe filed in September 2024. Although

labeled a "Second Amended Complaint," App. 123, it added an allegation that Doe

withdrew her child from the District after filing the suit. Because that new allegation was

"based on events that occurred *after* the initiation of the lawsuit," Doe's September 2024

complaint was a supplemental complaint, not an amended complaint. *Lutter v. JNESO*,

86 F.4th 111, 125 (3d Cir. 2023) (distinguishing between the two). Accordingly, Doe

must establish Article III standing for "the claims and requested relief substantively

---

[4] In this appeal, the parties have briefed a facial challenge to Doe's standing, not a factual challenge. *See Hartig*, 836 F.3d at 268 (recounting the difference between a facial challenge, "which attacks the complaint on its face without contesting its alleged facts," and a factual challenge, which permits a defendant to introduce evidence outside the pleadings). Thus, we do not consider the declaration the District submitted during the preliminary injunction proceedings.

affected by the alleged post-suit developments" as of September 2024, when she filed her supplemental complaint. *Id.* at 125–26.

**A**

We begin with Doe's claims for damages. "When a plaintiff seeks retrospective . . . relief in the form of money damages, [she] can establish standing through evidence of a past injury." *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 317–18 (3d Cir. 2022).

The Supreme Court's recent decision in *Mirabelli v. Bonta*, 607 U.S. __, 146 S. Ct. 797 (2026) (per curiam), sheds light on Doe's standing. In *Mirabelli*, as relevant here, California parents brought due process challenges to statewide policies that permitted disclosure of a student's gender transitioning at school only if the student consented. *Id*. at 800–01. A district court enjoined the enforcement of the policies, and the Ninth Circuit stayed that injunction pending appeal. *Id.* at 801–02.

The Supreme Court vacated the stay with respect to the parents. *Id.* at 802. It opined that the parents were likely to succeed on the merits of their due process claims. *Id.* at 802–03. It also addressed standing to pursue prospective relief, stating that the parents "very likely have standing because they are objects of the challenged exclusion policies." *Id.* at 803 (citing *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025)). In response to the Ninth Circuit's concerns that the injunction was overbroad because it provided relief "for all the parents of California public school students," the Court stated that the relief applied "only for those parents who object to the challenged policies." *Id.* The Court did not limit the injunctive relief to parents who demonstrated

6

that their children had engaged or likely will engage in gender transitioning at school. *See id.*

Although the *Mirabelli* opinion is not conclusive on the merits of that case, it remains informative to lower courts considering similar cases. *See Trump v. Boyle*, 606 U.S. __, 145 S. Ct. 2653, 2654 (2025). And *Mirabelli* shows that Doe has demonstrated Article III standing to pursue damages because, at the time of her alleged injury (i.e., during the 2023–2024 school year), she (1) was the parent of a child in a District school; (2) as such, was the object of the District's Policy; and (3) demanded that the District not apply the Policy to her. Accordingly, we will reverse the District Court's order insofar as it dismissed Doe's claim for damages on standing grounds.

**B**

By contrast, Doe has not demonstrated standing to pursue prospective relief. To obtain that relief, she "must show that 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Reading v. N. Hanover Twp.*, 124 F.4th 189, 196 (3d Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). But Doe withdrew her child from the District before she filed her September 2024 supplemental complaint. So, unlike the "parents of California public school students" in *Mirabelli*, 146 S. Ct. at 803, Doe is no longer the object of the District's Policy. And whether she will become an object of the Policy sometime in the future is too speculative to afford Doe standing to pursue prospective relief. *See Yaw*, 49 F.4th at 318 (stating that "[a]llegations of *possible* future injury are not sufficient" (alteration in original) (quoting *Clapper*, 568 U.S. at 409)). Doe did not, for example,

7

allege that she *would* re-enroll her child in the District if the Policy were no longer in effect. She did not even allege that she would be likely to re-enroll her child. Instead, she only alleged that she would *consider* re-enrolling her child in the District. This allegation does not demonstrate that Doe's child remains in parochial school because of the Policy, so it does not support a substantial risk of future harm. [5]

Nonetheless, a dismissal for lack of Article III standing must be without prejudice, as the court lacks subject matter jurisdiction to resolve the merits. *Cook v. GameStop, Inc.*, 148 F.4th 153, 163 (3d Cir. 2025). So we will modify the District Court's order to dismiss the claims for prospective relief without prejudice, and we will affirm that part of the order as modified.

\*    \*    \*

For the foregoing reasons, we will reverse the part of the District Court's order that dismissed Doe's claims for damages. As to the part of the order pertaining to Doe's claims for prospective relief, we will modify the order to a dismissal without prejudice, and we will affirm that part of the order as modified.

---

[5] The partial dissent says the policy "still precludes [Doe's] return" to the District. Dissent at 2. The only support for this is Doe's willingness to consider re-enrolling her child in the District if the policy goes away. But one's willingness to consider a particular action does not make one likely to take that action. Moreover, myriad factors could influence Doe's decision about whether her child should continue attending the parochial school the child has attended for the past two school years. Thus, based on the operative complaint, we do not agree that "re-enrollment remains likely." Dissent at 3.

Walter S. Zimolong, III  [Argued]
Zimolong

    *Counsel for Plaintiff-Appellant*

Christina L. Lane  [Argued]
Maiello Brungo & Maiello

Jaime N. Doherty  [Argued]
Lisa M. Siefert
GRB Law

    *Counsel for Defendant-Appellee*

*Doe v. Pine Richland Sch. Dist.*, No. 24-3348

_____

HARDIMAN, *Circuit Judge*, concurring in part and dissenting in part.

The Court rightly concludes that the Supreme Court's decision in *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026) (per curiam), requires us to vacate the District Court's order and remand for further proceedings. I agree that Jane Doe has standing to seek damages for alleged violations to her right "not to be shut out of participation in decisions regarding [her daughter's] mental health." *Id.* at 803. But I disagree with the majority's conclusion that Doe lacks standing to seek prospective relief. So I respectfully dissent from Part II.B of the panel's opinion.

I

Doe alleged that the Pine Richland School District adopted a confidential "gender transition" policy as part of its administrative regulation called Nondiscrimination in School and Classroom Practice – Gender and Gender Identity. App. 137–38. Under that policy, if Doe's daughter exhibited gender dysphoria, the School District would refer to her by male pronouns and perhaps even a new name without informing her mother (unless her daughter consented to the disclosure). As the Court holds today, Doe is entitled to seek damages for harm caused by that policy.

But what about prospective relief? The Court holds that Doe cannot obtain such relief because her risk of future injury is too speculative: Doe withdrew her daughter from her public school and *would consider* re-enrolling her there if the confidential gender transition policy were enjoined. I disagree. It is true that Doe's standing to sue for

1

prospective relief would be stronger if she had pleaded that she *would* return her daughter to the public school system if the policy were scrapped. But her allegation that she *would consider* returning to the School District is, in my view, enough to confer standing to seek prospective relief. *See* App. 128–29.

Plaintiffs may establish "standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (citation omitted). Doe met that burden here. She suffered harm because, as alleged, the confidential gender transition policy violated her constitutional rights. *Mirabelli*, 146 S. Ct. at 803. She then "withdrew" her daughter "because" of that policy and enrolled her in private school. App. 128–29. So the policy "prompt[ed]" Doe "to reasonably incur costs to . . . avoid" violations to her constitutional right to direct her child's upbringing. *Clapper*, 568 U.S. at 414 n.5; *see also Mirabelli*, 146 S. Ct. at 803. And while that policy remains in effect, Doe will continue to mitigate its unconstitutional harms by paying private school tuition. That pecuniary injury continues; it is not "speculative." *Clapper*, 568 U.S. at 410, 414.

According to the majority, Doe is no longer the "object" of the confidential gender transition policy because she withdrew her daughter from public school. Maj. Op. at 7–8 (citing *Mirabelli*, 146 S. Ct. at 803). But Doe complained not only that the policy drove her away, but that it still precludes her return. So Doe is not seeking to "manufacture standing merely by inflicting harm on [herself] based on [her] fears of hypothetical future harm." *Clapper*, 568 U.S. at 416. Instead, her harm continues while she is "taking the school district at its word." *Parents Protecting Our Child., UA v. Eau Claire Area Sch.*

*Dist.*, 145 S. Ct. 14, 14 (2024) (Alito, J., dissenting from the denial of certiorari). Under the majority's logic, parents willing to endure ongoing constitutional violations can obtain prospective relief, but parents who seek an injunction before deciding to re-enroll their children do not. That untenable result illustrates why Doe has standing to seek prospective relief as long as re-enrollment remains likely.

Doe's injury is redressable by injunctive relief as well. Doe remains the "object" of the confidential gender transition policy while she continues to pay private school tuition to mitigate her alleged harm. So the policy "causes injury to [Doe]" and "invalidating the regulation would redress [her] injuries." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025). An injunction here would abate Doe's financial harm (the tuition she is paying), so the prospective relief she seeks is not declaratory. *See California v. Texas*, 593 U.S. 659, 671 (2021).

\*   \*   \*

The Pine Richland School District has decided that parents "are not entitled to know their kids' identities." *Parents Protecting Our Child., UA*, 145 S. Ct. at 14 (Alito, J, dissenting from the denial of certiorari) (citation omitted). But "[t]he United States of America is not Sparta, where children were considered wards of the state." *Hilsenrath ex rel. C.H. v. Sch. Dist. of Chathams*, 136 F.4th 484, 494 (3d Cir. 2025). As alleged, the confidential transition policy "cut out the primary protectors of children's best interests: their parents." *Mirabelli*, 146 S. Ct. at 802. So the majority rightly holds that Doe has standing to press her damages suit against the School District. But for the reasons stated,

3

Doe pleaded (barely) enough to seek prospective relief. I would vacate the District

Court's order in full and, with that qualifier, I respectfully dissent in part.

4